UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-mj-8012-RMM

UNITED STATES OF AMERICA

v.

Salvador Alonso-Miranda,
a/k/a "Cuba 18,"

Defendant.
_____/

FILED BY ____SP____ D.C.

Jan 9, 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)? ___ Yes ✓ No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? ___ Yes ✓ No

3. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)? ___ Yes ✓ No

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

BY: *Adam C. McMichael*
_____
ADAM McMICHAEL
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 0772321
500 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel: (561) 820-8711
Fax: (561) 820-8777
Email: Adam.McMichael@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

FILED BY _____SP_____ D.C.
Jan 9, 2023
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

| United States of America | ) |
|---|---|
| v. | ) |
| | ) Case No. 23-mj-8012-RMM |
| Salvador Alonso-Miranda, a/k/a "Cuba 18," | ) |
| | ) |
| Defendant(s) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __July 20, 2022__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii). | Possession with intent to distribute a controlled substance, that is, crystal methamphetamine |

This criminal complaint is based on these facts:
See attached affidavit in support of criminal complaint

☑ Continued on the attached sheet.

_____
Complainant's signature

Rey Paniagua, Task Force Officer, DEA
Printed name and title

Sworn to and signed before me by Telephone (Facetime) per Fed. R. Crim. P. 4(d) & 4.1

Date: __01/09/2023__

_____
Judge's signature

City and state: __West Palm Beach, Florida__

Ryon M. McCabe, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT

I, Rey Paniagua, a Task Force Officer with the United States Drug Enforcement Administration (DEA), United States Department of Justice, having been duly sworn, do hereby depose and state as follows:

### Introduction

1. This affidavit is submitted in support of a criminal complaint charging **Salvador ALONSO-Miranda,** a/k/a "Cuba 18," with Possession with Intent to Distribute a controlled substance, namely over five hundred (500) grams of a mixture or substance containing a detectable amount of Methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(viii).

2. As a Task Force Officer of the United States Department of Justice, I am authorized to conduct criminal investigations of violations of Title 21 of the United States Code. Your affiant is a sworn Deputy Sheriff with the Palm Beach County Sheriff's Office (PBSO), and has served in that capacity since 2000. Your affiant is currently assigned to PBSO Narcotics Division and from there to the DEA, West Palm Beach District Office, Task Force Group. Your affiant has successfully completed the Criminal Justice Standards and Training Police Academy and is certified by the Criminal Justice Standards and Training Commission as a Law Enforcement Officer.

3. I have received extensive training in conducting narcotics investigations and in identifying the means and methods used by narcotics traffickers. I have conducted or participated in numerous investigations of this nature. Much of this training and experience has been directed at the detection, investigation, seizure, and prosecution of individuals involved in the manufacture, possession, and distribution of controlled substances. Through my training, education, and

experience, which has included debriefing cooperating drug traffickers, monitoring wiretapped conversations of drug traffickers, acting in an undercover capacity, conducting searches of locations where drugs and money have been found, and conducting surveillance on individuals engaged in drug trafficking I have learned the various methods, packaging materials, and actions that drug traffickers utilize to conduct their illegal business and in their efforts to thwart law enforcement. Since approximately 2002, I have been personally involved in hundreds of investigations of Mexican related drug trafficking conspiracies. I have reviewed hundreds of hours of prior audio-recorded conversations in English and Spanish in the course of those previous investigations, from both Court-authorized wiretaps and consensually recorded conversations. I have acted as an undercover agent and conducted well in excess of 100 meetings and controlled drug transactions myself, on behalf of law enforcement.

4. The information contained in this affidavit is based on my own personal knowledge as well as information imparted to me from other law enforcement officers and agents. This affidavit is submitted for the limited purpose of establishing probable cause and at times describes the nature and meaning of communications, rather than the specific wording and terminology used by the parties mentioned herein. Additionally, this affidavit does not purport to describe everything known to your affiant concerning the investigation.

## PROBABLE CAUSE

5. Since 2021, Drug Enforcement Administration (DEA), TFO Rey Paniagua, acting in an undercover capacity (UC), hereinafter referred as to "UC" has been in contact with a drug trafficking organization facilitator (hereinafter referred as "FACILITATOR").[1]

---

[1] All communications described in this affidavit were recorded and conducted in Spanish unless otherwise noted. The translations are not verbatim.

6. On or about July 2022, the UC and the FACILATOR started exchanging a series of communications, primarily text messages regarding the UC purchasing some crystal methamphetamine from a source of supply in Atlanta, Georgia. The UC agreed to purchase two (2) kilograms of crystal methamphetamine for a total of $10,500 of United States Currency (USC). The FACILITATOR informed the UC that the transporter, who was later identified by law enforcement as **Salvador ALONSO-Miranda** would be traveling from Pensacola, Florida to Atlanta, Georgia to pick up the crystal methamphetamine. ALONSO-Miranda would then travel to West Palm Beach, Florida to deliver the crystal methamphetamine to the UC.

7. On July 20, 2022, the UC sent a text message to the FACILITATOR asking him how everything was. The FACILITATOR replied back that ALONSO-Miranda had left the day before and that he was going to call the UC when he (ALONSO-Miranda) was close to the UC.

8. On the same date, the UC received a text message from the FACILITATOR with a contact name of "Cuba 18" with telephone number 786-226-XXXX. A few minutes later the UC received a text message from the FACILITATOR advising that ALONSO-Miranda was sleeping close by and that he (ALONSO-Miranda) was going to call the UC so that they could meet.

9. Later the same date, the UC received a text message from ALONSO-Miranda, utilizing telephone number 786-226-XXXX. The text message read "Hello it's from the FACILITATOR."[2]

10. Minutes later the UC received an incoming call from the FACILITATOR. During the call, the FACILITATOR informed the UC that ALONSO-Miranda was calling the UC and that he was there (referring to the UC's location).

---

[2] The name has been changed by Law Enforcement.

11. The UC then received an incoming call from ALONSO-Miranda, utilizing telephone number 786-226-XXXX. During the call, ALONSO-Miranda informed the UC that he was at a gas station located at North Dixie Highway. ALONSO-Miranda asked the UC where they could meet. The UC suggested to meet at a restaurant in the area of I-95 and Okeechobee Boulevard in West Palm Beach. ALONSO-Miranda asked the UC to send him the address.

12. The UC provided an address of a gas station located in the area of I-95 and Okeechobee Boulevard in the City of West Palm Beach.

13. Later on the same day of July 20, 2022, the UC provided ALONSO-Miranda with a second address of the actual meet location for a restaurant located at 2611 Okeechobee Boulevard West Palm Beach, Florida, within the Southern District of Florida. This was followed by another text message advising ALONSO-Miranda that he was ten minutes away.

14. At approximately 12:04 p.m., the UC placed a telephone call to ALONSO-Miranda to let him know that he was there at the meet location. During the call, ALONSO-Miranda informed the UC that a police vehicle was in front of the restaurant. The UC instructed ALONSO-Miranda to wait until the police officer went inside the restaurant. ALONSO-Miranda told the UC that he was just dropping off and picking up (referring to dropping off the crystal methamphetamine and picking up the money). The UC told ALONSO-Miranda that he wanted him to count the money and that he needed to see the quality of the crystal methamphetamine. ALONSO-Miranda told the UC that he (ALONSO-Miranda) didn't have the time to count it (referring to the money).

15. Following the telephone call, the UC observed ALONSO-Miranda exit a white vehicle and walk towards the rear of the passenger side of the vehicle. ALONSO-Miranda retrieved a McDonald's paper bag from the rear passenger side of the vehicle and walked over to the UC's

vehicle. ALONSO-Miranda then entered the UC's vehicle front passenger side and shook the UC's hand. ALONSO-Miranda then handed the UC the McDonald's paper bag. The UC observed two (2) clear Ziploc bags containing suspected crystal methamphetamine inside. The UC proceeded to lift up both of the plastic bags to check the quality and the size of the shards of the crystal methamphetamine as ALONSO-Miranda witnessed. The UC then provided ALONSO-Miranda with $10,500 of DEA Official Advance Funds. The UC told ALONSO-Miranda that it was supposed to be $10,400 but that he added an additional $100 for them to give to the FACILITATOR.

16. At approximately 12:39 p.m., a Martin County Sheriff's Office Marked Unit conducted a traffic stop of the vehicle ALONSO-Miranda was driving. During the traffic stop, ALONSO-Miranda was identified as the driver of the vehicle and sole occupant.

17. Forensic testing of the suspected crystal methamphetamine was later conducted by the DEA Southeast Laboratory. A report from the laboratory indicated that the substance the UC purchased from ALONSO-Miranda was Methamphetamine Hydrochloride, with a net weight of 1941.6 grams (+/- 0.5 grams), and a purity of 98% (+/- 6%).

18. Based on the foregoing, your affiant respectfully submits that there is probable cause to believe that Salvador F. ALONSO-Miranda has committed the criminal offense of Possession with Intent to Distribute a controlled substance, namely over five hundred (500) grams of a mixture or substance containing a detectable amount of Methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(viii).

FURTHER YOUR AFFIANT SAITH NAUGHT.

_____
Rey Paniagua
Task Force Officer, DEA

Sworn to and attested by Telephone-Facetime
per Fed. R. Crim. P. 4(d) and 4.1 on __9__ day of January 2023

_____
HON. RYON M. MCCABE
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

CASE NO. 23-mj-80012-RMM

Defendant's Name: Salvador ALONSO-Miranda, a/k/a "Cuba 18,"

| COUNT | VIOLATION | U.S. CODE | MAX. PENALTY |
|---|---|---|---|
| 1 | Possession with intent to distribute a controlled substance, that is, crystal methamphetamine | 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii) | 10 years to life imprisonment<br>$10,000,000 fine<br>5 years to life supervised release<br>$100 Special Assessment |