UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cr-80032-Cannon/Reinhart

UNITED STATES OF AMERICA

v.

SALVADOR ALONSO-MIRANDA,

Defendant.
_____/

PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("this Office") and SALVADOR ALONSO-MIRANDA (hereinafter referred to as the "defendant") enter into the following agreement:

1. The defendant agrees to plead guilty to all three counts of the Information, which charges the defendant with (Count 1) conspiracy to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii) and 846; and (Counts 2 and 3) possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(A)(viii) and 18 U.S.C. § 2.

2. The defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that

2

the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence considering other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense(s) identified in paragraph 1 and that the defendant may not withdraw the plea solely because of the sentence imposed.

3. The defendant also understands and acknowledges that for each of the three counts to which he is pleading guilty the Court must impose a minimum term of imprisonment of 10 years and may impose a statutory maximum term of imprisonment of up to life, followed by a term of supervised release of 5 years up to life. These sentences of imprisonment may be run consecutively for a total sentence of three consecutive life sentences. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $10,000,000 for each count and may order forfeiture and restitution.

4. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, a special assessment in the amount of $100 will be imposed on the defendant for each of the three counts. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing. If a defendant is financially unable to pay the special assessment, the defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

3

5. This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

6. This Office agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, this Office will file a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. The parties will jointly recommend at sentencing that the defendant be sentenced at the low end of the guideline range, as that range is determined by the Court. This Office, however, will not be required to make this recommendation and motion if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but

4

not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

7. The United States agrees that the defendant should receive a two-level decrease as a minor participant in the offense, pursuant to Section 3B1.2 of the Sentencing Guidelines.

8. This office and the defendant agree that at the time of sentencing, although not binding on the probation office or the Court, they will jointly recommend that, pursuant to Section 5C1.2 of the Sentencing Guidelines, the Court impose a sentence within the Sentencing Guidelines range without regard to any statutory minimum sentence identified in paragraph 3 above, provided that:

> (a) the Defendant does not have:
> 1. more than four Criminal History points, excluding any Criminal History points resulting from a 1-point offense, as calculated under the Sentencing Guidelines;
> 2. a prior offense earning three points as calculated under the Sentencing Guidelines; and
> 3. a prior violent offense (as defined in 18 U.S.C. § 16) earning two points as calculated under the Sentencing Guidelines;
> (b) the Defendant did not use violence or credible threats of violence or possessed a firearm or other dangerous weapon (or induced another participant to do so) in connection with the offense;
> (c) the offense did not result in death or serious bodily injury to any person;
> (d) the Defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the Sentencing Guidelines and was not engaged in a continuing criminal enterprise; and
> (e) not later than the time of the initial sentencing hearing, the Defendant has truthfully provided to this Office all information and evidence that the defendant has concerning the offense of offenses that were part of the same course of conduct or of a common scheme or plan.

9. Provided that the defendant satisfies the criteria in paragraph 7, in exchange for the defendant's express agreement that he will not later seek a further reduced sentence pursuant to 18 U.S.C. § 3582(c) in the event the Commission amends Section 5C1.2 to conform to the safety-valve criteria in the current version of 18 U.S.C. § 3553(e) under the First Step Act of 2018 and

makes any such amendment retroactive, this Office will not object to a downward variance of two levels from the guideline range calculated under the current Guidelines Manual (to reflect the 2-level reduction currently contemplated in 2D1.1(b)(18)). However, if the Court does not grant the two-level variance requested based on the proposed amendment, then the defendant shall be released from the above-described agreement relating to 18 U.S.C. § 3582(c). This Office remains free to oppose a variance sought on any other grounds. The defendant understands and agrees that this provision is not binding on the Court or the Probation Office, and that the Court remains free to deny any variance requested by either party or jointly.

10. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, this Office, or the probation office, is a prediction, not a promise, and is not binding on this Office, the probation office, or the Court. The defendant understands further that any recommendation that this Office makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 2 above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, this Office, or a recommendation made jointly by the defendant and this Office.

11. The defendant agrees, in an individual and any other capacity, to forfeit to the United States, voluntarily and immediately, any right, title, and interest to any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of a

6

violation of 21 U.S.C. §§ 841 or 846, and any property used or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation, pursuant to 21 U.S.C. § 853.

12. The defendant further agrees that forfeiture is independent of any assessment, fine, cost, restitution, or penalty that may be imposed by the Court. The defendant knowingly and voluntarily agrees to waive all constitutional, legal, and equitable defenses to the forfeiture, including excessive fines under the Eighth Amendment to the United States Constitution. In addition, the defendant agrees to waive: any applicable time limits for administrative or judicial forfeiture proceedings, the requirements of Fed. R. Crim. P. 32.2 and 43(a), and any appeal of the forfeiture.

13. The defendant also agrees to fully and truthfully disclose the existence, nature and location of all assets in which the defendant has or had any direct or indirect financial interest or control, and any assets involved in the offenses of conviction. The defendant agrees to take all steps requested by the United States for the recovery and forfeiture of all assets identified by the United States as subject to forfeiture. This includes, but is not limited to, the timely delivery upon request of all necessary and appropriate documentation to deliver good and marketable title, consenting to all orders of forfeiture, and not contesting or impeding in any way with any criminal, civil or administrative forfeiture proceeding concerning the forfeiture.

14. The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offenses to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including the defendant's

7

attorney or the Court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. Defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that the defendant's plea may entail, even if the consequence is the defendant's automatic removal from the United States.

15. This is the entire agreement and understanding between this Office and the defendant. There are no other agreements, promises, representations, or understandings.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: 5/4/23         By: _____
                          DANIEL E. FUNK
                          ASSISTANT UNITED STATES ATTORNEY

Date: 5/8/23         By: _____
                          SCOTT BERRY
                          ATTORNEY FOR DEFENDANT

Date: 5/8/23         By: _____
                          SALVADOR ALONSO-MIRANDA
                          DEFENDANT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cr-80032-Cannon/Reinhart

UNITED STATES OF AMERICA

v.

SALVADOR ALONSO-MIRANDA,

Defendant.
_____/

## ACKNOWLEDGMENT OF OFFENSE ELEMENTS AND STIPULATION AS TO FACTUAL BASIS FOR GUILTY PLEA

I, SALVADOR ALONSO-MIRANDA, agree that the facts set forth below are true and accurate and that the United States could prove these facts against me at trial. I am pleading guilty to all three counts in the Information which charges me with (Count 1) conspiracy to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii) and 846; and (Counts 2 and 3) possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(A)(viii) and 18 U.S.C. § 2.

### NATURE OF THE CHARGES

I am aware of and understand the nature of the charge to which I am pleading guilty. I have discussed with my attorney the charges and what the prosecutor must prove to convict me.

**Count 1 - Conspiracy to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii) and 846**

I understand that the United States must prove the following elements of the offense beyond a reasonable doubt:

    First:    Two or more people in some way agreed to try to accomplish a shared and unlawful plan to distribute and possess with intent to distribute methamphetamine;

1

Second:      The defendant knew the unlawful purpose of the plan and willfully joined in it; and

Third:       The object of the unlawful plan was to distribute and possess with intent to distribute 50 grams or more of methamphetamine.

**Counts 2 and 3 - Possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(A)(viii) and 18 U.S.C. § 2.**

The Defendant can be found guilty of possession with intent to distribute 50 grams or more of methamphetamine only if the following facts are proved beyond a reasonable doubt:

First:       The defendant knowingly possessed methamphetamine;

Second:      The defendant intended to distribute the methamphetamine; and

Three:       The methamphetamine was 50 grams or more.

To "intend to distribute" is to plan to deliver possession of a controlled substance to someone else, even if nothing of value is exchanged.

## STIPULATED FACTS

Beginning in 2021, a federal agent acting in an undercover capacity (UC) communicated with a drug trafficking organization facilitator ("FACILITATOR"). On or about July 2022, the UC and FACILITATOR started exchanging a series of communications regarding the UC purchasing crystal methamphetamine from a source of supply in Atlanta, Georgia. The UC agreed to purchase two (2) kilograms of crystal methamphetamine for a total of $10,500 of United States currency. The FACILITATOR informed the UC that the transporter, who was later identified by law enforcement as Salvador ALONSO-Miranda, would be traveling from Pensacola, Florida, to Atlanta, Georgia, to pick up the crystal methamphetamine. ALONSO-Miranda would then travel to West Palm Beach, Florida, to deliver the crystal methamphetamine to the UC.

On July 20, 2022, the FACILITATOR communicated with the UC about the location of

ALONSO-Miranda and indicated that ALONSO-Miranda would be contacting the UC. The UC received an incoming call from ALONZO-Miranda. He told the UC where he was located and asked for a meeting location. The UC provided ALONZO-Miranda with a meeting location at a restaurant on Okeechobee Boulevard in West Palm Beach, Florida, within the Southern District of Florida. During a telephone call prior to the meeting, the UC told ALONSO-Miranda that he wanted him to count the money and that he needed to see the quality of the crystal methamphetamine. Following the telephone calls, the UC observed ALONSO-Mirnda exit a white vehicle and retrieve a paper bag from the rear passenger side of the vehicle. ALONSO-Miranda entered the UC's vehicle and handed the UC the bag which contained two (2) clear Ziploc bags containing crystal methamphetamine. As ALONSO-Miranda watched, the UC proceeded to lift both plastic bags to check the quality and size of the shards of crystal methamphetamine. The UC provided ALONSO-Miranda with $10,500 of DEA funds and ALONZO-Miranda drove away. Thereafter, a Martin County Sheriff's Office marked unit conducted a traffic stop of the vehicle ALONSO-Miranda was driving. During the traffic stop, ALONSO-Miranda was identified as the driver of the vehicle and sole occupant. Testing was later conducted by the DEA Southeast Laboratory which indicated that the substance the UC purchased from ALONSO-Miranda was methamphetamine hydrochloride with a net weight of 1941.6 grams (+/- 0.5 grams), and a purity of 98% (+/- 6/%).

From the later part of 2022 and extending into January 2023, the same UC started negotiating the purchase of six (6) to ten (10) kilograms of crystal methamphetamine. Through a series of telephone calls and text messages with ALONSO-Miranda and the SUPPLIER (a person different than the original FACILITATOR), the UC was able to arrange the delivery of an additional seven (7) kilograms of crystal methamphetamine from ALONSO-Miranda. The agreed

upon price was $35,000.

On February 10, 2023, at approximately 8:12 p.m., the UC received a telephone call from ALONSO-Miranda. During the call, ALONSO-Miranda told the UC that he had the seven (7) pieces (referring to crystal methamphetamine). ALONSO-Miranda told the UC that he would be arriving at the UC's location the following day in the late afternoon. ALONSO-Miranda told the UC that he would try to be there between 6 p.m. and 7 p.m. or earlier and that he would call the UC an hour prior to arriving.

On February 11, 2023, at approximately 7:02 a.m. GPS data obtained with a warrant indicated that ALONSO-Miranda's phone was traveling eastbound on Interstate 10 just east of Pensacola where ALONSO-Miranda was known to reside. At 12:22 p.m. GPS data associated with ALONSO-Miranda's phone indicated that it was southbound on Interstate 95. At approximately 1:30 p.m. a task force officer observed a white Honda traveling southbound. The vehicle was known to be driven by ALONSO-Miranda and was the same vehicle driven to the drug deal on July 20, 2022. Agents confirmed that ALONSO-Miranda was the only occupant of the vehicle.

At approximately 2:09 p.m., the UC received a text message from ALONSO-Miranda advising that he would be able to meet the UC in 3 hours in the same area where they met in July 2022. At approximately 4:20 p.m., Palm Beach County Sheriff's agents conducted a traffic stop on ALONSO-Miranda for speeding on I-95 north of Indiantown Road in Jupiter, Florida. ALONSO-Miranda was the only occupant of the vehicle. ALONSO-Miranda told agents that his sister was sick and he was driving from Pensacola to take care of her.

A drug K-9 sniffed the exterior of the Honda and positively alerted to the presence of the odor of a controlled substance. A subsequent search of the vehicle resulted in the recovery of a brown Home Depot paper bag. The bag contained seven (7) Ziploc plastic bags each containing

approximately a kilogram of crystal methamphetamine for a total of seven (7) kilograms of crystal methamphetamine. The crystal methamphetamine later field tested positive for the presence of methamphetamine. Testing was later conducted by the DEA Southeast Laboratory which indicated that the substance located in ALONSO-Miranda's car was methamphetamine hydrochloride with a net weight of 6972.1 grams (+/- 0.2 grams), and a purity of 99% (+/- 6/%).

Date: 5/8/23    By: _____
                    MARKENZY LAPOINTE
                    UNITED STATES ATTORNEY
                    DANIEL E. FUNK
                    ASSISTANT UNITED STATES ATTORNEY

Date: 5/8/23    By: _____
                    SCOTT BERRY
                    ATTORNEY FOR DEFENDANT

Date: 5/8/23    By: _____
                    SALVADOR ALONSO-MIRANDA
                    DEFENDANT

5